UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X   Case No.:
HELENA LIN,

                         Plaintiff,                                       **COMPLAINT**

   -against-

ALL MOBILE VIDEO, INC., ANTON DUKE,
individually, RICHARD DUKE, individually, and        Plaintiff Demands a
ERIK THIELKING, individually,                                  Trial by Jury

                         Defendants.
-------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.* ("FMLA"), and seeks to remedy violations of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* ("ADA"), as well as the New York State Executive Law and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by her employer on the basis of her actual and/or perceived disability together with creating a hostile work environment, failure to accommodate, failure to engage in the interactive process, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. §2617; 42 U.S.C. §12101, *et seq.*; 28 U.S.C. §§1331 and 1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

5. On or about December 21, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

6. On or about July 20, 2020, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8. Plaintiff is a breast cancer survivor and female resident of the State of New York, County of New York.

9. At all times material, Defendant ALL MOBILE VIDEO, INC. (hereinafter also referred to as "ALL MOBILE VIDEO"), was and is a domestic business corporation duly incorporated under the laws of the State of New York.

10. At all times material, Defendant ANTON DUKE was and is the "Co-owner/manager" of Defendant ALL MOBILE VIDEO.

11. At all times material, Defendant ANTON DUKE was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

12. At all times material, Defendant RICHARD DUKE was and is the "Co-owner/manager" of Defendant ALL MOBILE VIDEO.

13. At all times material, Defendant RICHARD DUKE was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

14. At all times material, Defendant ERIK THIELKING (hereinafter also referred to as

"THIELKING") was and is Defendant ALL MOBILE VIDEO's "Director of Sales."

15. At all times material, Defendant THIELKING was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

16. Defendant ALL MOBILE VIDEO, Defendant ANTON DUKE, Defendant RICHARD DUKE, and Defendant THIELKING are hereinafter also collectively referred to as "Defendants."

17. At all times material, Plaintiff was an employee of Defendants.

18. At all times material, Plaintiff was a qualified employee under the FMLA.

19. At all times material, Plaintiff worked at least 1,250 hours during the 12-month period immediately preceding her request for leave.

20. At all times material, Defendant ALL MOBILE VIDEO was and is a qualified employer under the FMLA and employed at least 50 employees within a 75-mile radius of the location at which Plaintiff worked.

## MATERIAL FACTS

21. In or around June 2007, Plaintiff began working for Defendant ALL MOBILE VIDEO as a "Marketing Manager/Sales Engineer" at its 515 West 57th Street, New York, NY 10019 location.

22. On or about October 31, 2011, Plaintiff was diagnosed with breast cancer.

23. In or around early November 2011, Plaintiff told Defendant ANTON DUKE that she had been diagnosed with cancer. Defendant ANTON DUKE simply told Plaintiff, "**If you need time off it will need to be taken out of your PTO.**"

24. Additionally, in or around November 2011, Plaintiff also told Defendant THIELKING that she had been diagnosed with cancer. Defendant THIELKING replied, "OK."

3

25. Over the course of the next few weeks, Plaintiff sought a second opinion for her diagnosis and received a number of telephone calls from doctors, some of which occurred during work hours. Due to their sensitive nature, Plaintiff regularly took the calls in the restroom or an empty office.

26. In or around mid-November 2011, Defendant THIELKING told Plaintiff that her personal phone calls were "disruptive" and commented that Plaintiff was "never at her desk." Plaintiff explained that the recent telephone calls were from doctors related to her cancer diagnosis and that she could not take those calls out in the open[1]. Even after her explanation, Defendant THIELKING continued to reprimand Plaintiff for taking personal calls and being away from her desk.

27. Plaintiff's request to be allowed to step away from her desk to take sensitive medically related phone calls was a request for a reasonable accommodation.

28. On or about November 28, 2011, Plaintiff received an abnormally large number of telephone calls from her doctors discussing her diagnosis and treatment plan. As a result, Plaintiff was away from her desk more than usual for such calls.

29. On or about November 30, 2011, Defendant THIELKING emailed Plaintiff and reprimanded her for her "recent use of telephones and extended breaks without permission." Defendant THIELKING accused Plaintiff of recently taking "over one hour of personal phone calls at the office" and then taking an extended lunch. Defendant THIELKING continued and wrote, "Advance notice for time you request off is required. Should you fail to achieve immediate and sustained improvement in your course of the workday, progressive disciplinary actions, **including termination may result.**"

---

[1] Plaintiff did not have an office and Defendants' office was an "open concept" design.

4

30. Later that day, Plaintiff emailed Defendants' "Head of Human Resources ('HR')," Maryanne Noonan, and complained about Defendant THIELKING's harassing and discriminatory behavior. Specifically, Plaintiff wrote, "**I have reason to believe that he is treating me in a hostile manner and creating a hostile work environment as a result of my health condition.**"

31. Shortly thereafter, Ms. Noonan called Plaintiff and offered to move her to a part of the office away from Defendant THIELKING so that she could take her doctor's calls without issue. Plaintiff agreed to such a move. Even so, Plaintiff's work location was never moved.

32. In or around January 2012, Plaintiff requested eight (8) weeks of FMLA leave for her upcoming cancer surgery. Defendants granted Plaintiff's request.

33. In or around February 2012, Plaintiff underwent surgery to treat her breast cancer.

34. However, even though Plaintiff's request for 8 weeks of FMLA leave had been granted, immediately following her surgery, Defendants began pressuring her to return to work.

35. For instance, over the first three (3) weeks of Plaintiff's recovery, Defendant THIELKING called Plaintiff a number of times and told her, "**Your clients miss you**" and "**There is so much work to do.**" Defendant THIELKING also repeatedly asked Plaintiff, "**When are you coming back?**"

36. Because Plaintiff reasonably believed that she was putting her job at risk if she followed her doctors' recommendation and took the full 8 weeks of FMLA leave to recover, she returned to work **only three (3) weeks after her cancer surgery**.

37. Although Plaintiff's surgery was successful, she still needed to attend weekly chemotherapy sessions to treat her cancer, which her doctors recommended be administered on Wednesdays

5

so that she could recover over the weekend[2].

38. However, shortly after she began attending chemotherapy on Wednesdays, Defendant THIELKING complained to Plaintiff that she was away from the office too much in the middle of the week and her chemotherapy was interrupting her workflow. Defendant THIELKING then requested that Plaintiff accommodate *Defendants* and do her chemotherapy on Fridays. Because Plaintiff reasonably feared for her job, she changed her regular chemotherapy sessions to Fridays, when appointments were available[3].

39. Thereafter, each time that Plaintiff went to chemotherapy on a day other than Friday, even though he knew she was going to chemotherapy, **Defendant THIELKING complained that Plaintiff was leaving work**.

40. Additionally, although Plaintiff rescheduled her chemotherapy sessions to accommodate Defendants, Plaintiff was required to "make up" the time she spent in chemotherapy by skipping lunch and/or working additional hours on the other workdays.

41. In or around Summer 2012, Plaintiff had a second surgery to treat her cancer.

42. Thereafter, Plaintiff's doctors recommended that she be treated with radiation. Plaintiff scheduled her radiation treatment for after work hours to avoid further discrimination and retaliation by Defendants.

43. Additionally, on at least four (4) instances after her cancer surgery, Defendant ANTON DUKE complained to Plaintiff that she was "**jacking up the price of the company's health insurance.**"

---

[2] Plaintiff generally did not experience side effects from chemotherapy until forty-right (48) hours after it was administered. Thus, had she received her chemotherapy on Wednesday, as recommended by her doctors, Plaintiff would have been able to recuperate over the weekend and be free of side effects when work began the following week.

[3] If there was no Friday appointment available, Plaintiff went to chemotherapy on Wednesdays.

6

44. In or around February 2013, Plaintiff received a "clean bill of health" from her doctors which meant that they could no longer detect cancer in her body.

45. Over the next several years, Defendants continued to discriminate and retaliate against Plaintiff due to her actual and/or perceived disability, as well as her requests for FMLA protected leave and reasonable accommodations, by assigning her non-disabled coworkers better sales leads. This had the impact of depressing Plaintiff's overall sales numbers and commissions.

46. Defendants hoped that assigning Plaintiff worse sales leads would eventually lead her to quit.

47. Moreover, on three (3) occasions between April 14, 2014 and July 12, 2016, Plaintiff was hospitalized for cellulitis from lymphedema, a condition caused by Plaintiff's breast cancer. Even though Defendants knew that she was in the hospital, **Plaintiff was required to respond to emails, text messages, and telephone calls**.

48. Then, from 2017 until Plaintiff's unlawful termination, Defendant THIELKING began noting when Plaintiff was away from her desk (even if it was just to go to the bathroom) and required her to either make up the time that she was away from her desk, or not be paid for it.

49. On or about June 22, 2017, in retaliation for her earlier requests for reasonable accommodations, as well as to further discriminate against her because of her actual and/or perceived disability, Defendants issued Plaintiff a write-up for "tardiness" because she allegedly "typically arrive[d] at 9:20 AM." Defendants also wrote that "Personal phone calls should be kept to a minimum."

50. Defendants issued Plaintiff this write-up to create a pretextual paper trail for her eventual termination because (i) Plaintiff did not typically arrive at 9:20 AM, (ii) if Plaintiff were late, it was only by a few minutes and her coworkers were not reprimanded for similar behavior,

7

and (iii) a majority of the telephone calls that Plaintiff received on her personal cellphone were from customers.

51. Furthermore, Defendants continued to discriminate and retaliate against Plaintiff by assigning her worse sales leads than her coworkers.

52. In or around mid-July 2018, Plaintiff took a previously planned vacation.

53. On or about July 31, 2018, Plaintiff was at work and her right arm began to swell while she also started to get chills and feel as if she was developing a fever, all of which are symptoms of cellulitis from lymphedema. Plaintiff told Defendant THIELKING that she needed to go to the hospital and left for the day. After she arrived at the emergency room, she was admitted to the hospital.

54. The next morning, Plaintiff called Defendant THIELKING and told him that she would likely be out for the rest of the week because she had been admitted to the hospital.

55. Later that morning, even though he knew she was in the hospital, Defendant THIELKING requested that Plaintiff answer emails from customers and make sales calls. Fearing for her job, Plaintiff complied and performed work from her hospital bed.

56. That same day, Defendant ANTON DUKE came into Defendants' offices and asked Plaintiff's coworkers where she was. Plaintiff's coworker, Mark Ptak, told Defendant ANTON DUKE that Plaintiff was in the hospital. Shortly thereafter, Defendant ANTON DUKE proclaimed, "**[Plaintiff] is only here for the health insurance.**"

57. Later, Defendant ANTON DUKE called Plaintiff, berated her, and callously said, "**You have been taking too many vacations**" and hung up the telephone.

58. On or about August 6, 2018, Plaintiff returned to work but experienced an allergic reaction to one of her medications. As a result, Plaintiff called Ms. Noonan to request FMLA protected

leave. However, Ms. Noonan's secretary told Plaintiff that she was away from the office and did not allow Plaintiff to leave a voicemail.

59. Thereafter, Plaintiff told Defendant THIELKING about her allergic reaction and requested that she be allowed to use FMLA leave to recover, as well as to attend follow-up doctor appointments and physical therapy. Defendant THIELKING told Plaintiff that he would speak with Ms. Noonan when she returned to the office.

60. Plaintiff's request to take FMLA protected leave, as well as for time off to attend follow-up visits and physical therapy was a request for a reasonable accommodation.

61. Defendants failed to engage in the interactive process.

62. Over the next few days, because of Defendant ANTON DUKE's previous statement that she "took too many vacations," Plaintiff was afraid to take any personal days to recover and continued to report to work.

63. On or about August 10, 2018, Plaintiff met with Defendant RICHARD DUKE and Defendant THIELKING. During the meeting, **a mere ten (10) days after Plaintiff was admitted to the hospital due to cellulitis, and a mere four (4) days after she requested FMLA leave**, Defendant RICHARD DUKE terminated Plaintiff under the pretext that her sales numbers were not good enough.

64. Defendants stated reason for terminating Plaintiff is pretext because she had never been counseled about her alleged "poor performance" before her termination and had a number of sales that were in the final stages of closing at the time of her termination.

65. Defendants terminated Plaintiff to interfere with her FMLA-protected leave and in retaliation for her request to take additional FMLA protected leave.

66. Defendants terminated Plaintiff's employment so they would not have to accommodate her

in the future or provide further FMLA leave.

67. Defendants terminated Plaintiff because of her actual and/or perceived disability.

68. Defendants failed to engage in the interactive process.

69. Defendants would not have harassed Plaintiff but for her disability or requests for a reasonable accommodation and/or FMLA protected leave.

70. As a result of Defendants' actions, Plaintiff felt humiliated, degraded, victimized, embarrassed, and emotionally distressed.

71. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress and physical ailments.

72. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff and has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

73. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

74. **Defendant ANTON DUKE and Defendant RICHARD DUKE, as the Owners of Defendant ALL MOBILE VIDEO, are individually and personally liable to Plaintiff for discrimination under New York State and New York City Law as the owners of the Corporate Defendant.**

## AS A FIRST CAUSE OF ACTION
## UNDER THE FAMILY AND MEDICAL LEAVE ACT
## <u>INTERFERENCE AND RETALIATION</u>

75. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. § 2615 of the FMLA states as follows:

   a. Interference with rights

      (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter.

      (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

77. Defendants interfered with Plaintiff's rights under the above section, discriminated against Plaintiff, and terminated Plaintiff from her employment because of her request to take leave under the FMLA.

## AS A SECOND CAUSE OF ACTION
## UNDER THE ADA
## <u>DISCRIMINATION</u>

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. Plaintiff claims that the Defendants violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101 – 336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

   (a) General Rule – No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, nob training, and other terms, conditions, and privileges of employment.

80. Defendants violated the above and Plaintiff suffered numerous damages as a result thereof.

## AS A THIRD CAUSE OF ACTION
## UNDER THE ADA
## RETALIATION AND INTERFERENCE

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

> (a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

83. Defendants violated Plaintiff's above rights as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

84. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of … the disability … of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

86. Defendants engaged in unlawful discriminatory practice by discriminating against the Plaintiff because of her disability and/or perceived disability.

12

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A FIFTH CAUSE OF ACTION
### UNDER STATE LAW
### RETALIATION

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before she has opposed any practices forbidden under this article."

90. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including termination, because of her opposition to Defendants' unlawful actions.

### AS A SIXTH CAUSE OF ACTION
### UNDER STATE LAW
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. New York State Executive Law §296(3)(a) provides:

> "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

93. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff by failing to provide a reasonable accommodation, and by failing to engage in the interactive process.

## AS A SEVENTH CAUSE OF ACTION
## UNDER STATE LAW
## AIDING AND ABETTING

94. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

96. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS AN EIGHTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

97. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived ... disability ... of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

99. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of her actual and/or perceived disability.

## AS A NINTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

100. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

102. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff.

## AS A TENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

103. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. The Administrative Code of the City of New York §8-107(15)(a) provides:

> "[A]ny person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights

in question provided that the disability is known or should have been known by the covered entity."

105. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(15)(a) by failing to provide a reasonable accommodation, and by failing to engage in the interactive process.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the FMLA, ADA, the New York State Executive Law, and the Administrative Code of the City of New York, and that the Defendants harassed and discriminated against Plaintiff on the basis of her actual and/or perceived disability, together with creating a hostile work environment, failure to provide a reasonable accommodation, failure to engage in the interactive process, retaliation, and unlawful termination;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff liquidated damages pursuant to the FMLA;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
August 7, 2020

PHILLIPS & ASSOCIATES, PLLC
*Attorneys for Plaintiff*

By: _____
Gregory W. Kirschenbaum, Esq.
45 Broadway, Suite 430
New York, NY 10004
(212) 248-7431
